FILED
United States Court of Appeals
Tenth Circuit

**PUBLISH**

September 20, 2019

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

Elisabeth A. Shumaker
Clerk of Court

───────────────────────────────

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KAREN LYNN MCCLAFLIN,

    Defendant - Appellant.

No. 18-1217

───────────────────────────────

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:17-CR-00168-CMA-1)**

───────────────────────────────

Ann Marie Taliaferro, Brown, Bradshaw & Moffat, L.L.P., Salt Lake City, Utah, for Defendant-Appellant.

James C. Murphy, Assistant United States Attorney (Jason R. Dunn, United States Attorney, with him on the brief), Denver Colorado, for Plaintiff-Appellee.

───────────────────────────────

Before **MATHESON**, **SEYMOUR**, and **BACHARACH**, Circuit Judges.

───────────────────────────────

**SEYMOUR**, Circuit Judge.

───────────────────────────────

    Defendant Karen McClaflin pled guilty to two counts stemming from the operation of a residential Ponzi scheme which defrauded investors of more than $14.5 million dollars. At sentencing, the district court calculated the advisory sentencing guidelines at 135 to 168 months' imprisonment, applied a 6-level

enhancement for substantial financial hardship to more than twenty-five victims, and then determined that a downward variant sentence of 96 months was appropriate. On appeal, Ms. McClaflin argues the district court: (1) abused its discretion by denying her motion for an additional continuance of the sentencing hearing, (2) procedurally erred by imposing the 6-level enhancement based upon victim impact statements, and (3) failed to consider all of the requisite 18 U.S.C. § 3553(a) factors. We affirm.

I.

Between March 2011 and early 2017, Ms. McClaflin operated a "fix and flip" real estate Ponzi scheme in which she made false promises to investors. On June 21, 2017, Ms. McClaflin entered into a plea agreement with the government for wire fraud and money laundering. The plea deal included a 2-level enhancement for a crime involving more than ten victims. The government indicated that it did not have the evidence at that time to support a 6-level enhancement for substantial financial hardship to more than twenty-five victims.

The parties jointly filed a motion to continue on September 1, 2017, and the district court moved the sentencing hearing set for January 17, 2018 to March 14 to give the parties more time to analyze documents regarding loss and restitution. On March 5, counsel for Ms. McClaflin requested another continuance due to Ms. McClaflin's poor health and hip problems. The district court moved the sentencing hearing to May 10, nearly an entire year after Ms. McClaflin pled guilty to the

charges. The week of the hearing Ms. McClaflin again requested her sentencing be continued on the grounds of her ill health. The district court denied the motion and it repeated this denial when Ms. McClaflin's counsel urged a continuance at the sentencing hearing.

At sentencing, the court questioned the government's decision not to pursue the 6-level enhancement. Notwithstanding the government's reticence and in order to implement the enhancement, the district court conducted an extensive review of the sworn victim impact statements attached to the presentence Report ("PSR"). The court made independent findings of fact regarding Ms. McClaflin's scheme and specifically found that Ms. McClaflin's offense resulted in substantial financial hardship to twenty-five or more victims. *See* U.S.S.G. § 2B1.1(b)(2)(C).

Prior to passing sentence, the district court heard testimony from victims of Ms. McClaflin's scheme from the Receiver who had been appointed by the court to recover assets related to the scheme, and from Ms. McClaflin herself. Finding that Ms. McClaflin committed a level 33 offense with a criminal history category of I, resulting in an advisory imprisonment range between 135 and 168 months, the court determined a downward variant sentence of 96 months was warranted. Ms. McClaflin appeals.

II.

We review the denial of a motion for continuance for abuse of discretion and will only find error if the district court's decision was "arbitrary or unreasonable and

materially prejudiced" the defendant. *Rogers v. Andrus Transp. Services,* 502 F.3d 1147, 1151 (10th Cir. 2007). In determining whether the denial of a continuance constitutes an abuse of discretion, we look to the individual circumstances of the case. *Id.*

The framework for reviewing the denial of a motion for a continuance "involves an examination of four factors: (1) the diligence of the party seeking the continuance; (2) the likelihood the continuance, if granted, would have accomplished the stated purpose; (3) the inconvenience to the opposing party, witnesses, and the court; and (4) the need for the continuance and any harm resulting from its denial." *United States v. Glaub,* 910 F.3d 1334, 1345 (10th Cir. 2018). "The final factor is the most important." *United States v. Orr,* 692 F.3d 1079, 1100 (10th Cir. 2012).

Of those four factors, Ms. McClaflin has not clearly satisfied any of them. Ms. McClaflin's counsel admitted that he was not prepared for the sentencing hearing, that he had not sufficiently talked to witnesses, and that he had not explained the extent of Ms. McClaflin's medical condition or ascertained proper facilities through the BOP. Nor had he filed a motion for a variant sentence. There was not a high likelihood that if a continuance were granted, Ms. McClaflin's health would improve much more than it already had. The district court noted that Ms. McClaflin was not undergoing an imminent medical procedure, and Ms. McClaflin's counsel conceded that her hip infection was "as low as it can be right now." Rec., vol. IV at 11.

Conversely, granting the continuance would have greatly inconvenienced the

opposing party and the court. Ms. McClaflin requested the continuance a mere five days before the hearing was set to commence, and it is likely that the victims and witnesses had previously made preparations to attend. The district court already had granted Ms. McClaflin and the government almost a year to review financial information and to prepare for sentencing, and it would have been required to rearrange its calendar even further in order to grant Ms. McClaflin a new hearing date.

Significantly, Ms. McClaflin has failed to demonstrate prejudice. In *United States v. West*, 828 F.2d 1468, 1471 (10th Cir. 1987), we held that the district court abused its discretion in denying the requested continuance because it precluded the defendant from calling "the only eyewitness who might have presented directly exculpatory testimony." [1] There, "the testimony was important and the prejudice resulting from the denial of a continuance was severe." *Id.* Here, however, the continuance would merely allow Ms. McClaflin to accumulate additional mitigating evidence. The district court did not abuse its discretion in denying the motion for a continuance.

---

[1] In *West*, 828 F.2d at 1470, the defendant's primary defense to a first-degree murder charge was that he did not strike the victim and was therefore innocent. The court denied the defendant's continuance motion until the next day, even when a subpoenaed witness who would testify that the defendant did not strike the victim did not appear on the day he was called and a reasonable possibility existed he would voluntarily appear the next day. *Id.* at 1470–71.

5

III.

Ms. McClaflin also contends that the district court made two procedural errors: first, by relying on sworn victim impact statements to *sua sponte* impose the 6-level enhancement; and second by failing to consider the requisite § 3553(a) factors. The parties disagree on the relevant standard of review.

"Fairness and judicial efficiency demand that litigants notify the district court of a procedural sentencing error with reasonable specificity, thereby providing that court the opportunity to correct its action in the first instance." *United States v. Robertson,* 568 F.3d 1203, 1209 (10th Cir. 2009). We require timely objections so the district court can consider and resolve them at the time they are raised and because "[i]n the case of an actual or invited procedural error, the district court can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome." *Puckett v. United States,* 556 U.S. 129, 134 (2009). It is Ms. McClaflin's position that she properly objected to the procedural errors and any failure to preserve the issues was excused because it was plain that further objection would have been futile. On the other hand, the government contends these claims were not properly objected to and should only be reviewed for plain error, which requires there be an "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Wright,* 848 F.3d 1274, 1278 (10th Cir. 2017).

A. *6-level enhancement*

6

Prior to sentencing, the government filed a written objection to the 6-level enhancement recommended in the PSR for substantial financial hardship to twenty-five or more victims. The only ground stated for the objection was that the government elected to stand by the plea agreement's offense level calculation of a 2-level enhancement based on more than ten victims. Ms. McClaflin joined the government's objection. At sentencing, the district court explained its process for applying the 6-level enhancement and walked through its underlying findings of fact. When the court prompted Ms. McClaflin's counsel to make any statement in regards to the written objection to the 6-level enhancement, defense counsel merely stated, "[i]t is the Government's objection . . . not the defendant's." Rec., vol. IV at 22. The judge prompted counsel a second time "to make any statement for purposes of your record on appeal" and counsel reiterated that he did not have a statement. *Id.* Ms. McClaflin's claim that further objection would have been futile is thus unconvincing.

We require that parties object with specificity so that the district court can correct its actions in the first instance. *See, e.g.*, *United States v. Holloway,* 826 F.3d 1237, 1251 (10th Cir. 2016); *Robertson,* 568 F.3d at 1209. Ms. McClaflin did not object to the accuracy of the sworn victim impact statements nor to the district court's reliance upon them. "We have repeatedly held that if a defendant fails to object to his presentence report, he waives his right to challenge the district court's reliance on it, unless the district court's decision to do so amounts to plain error." *Holloway,* 826 F.3d at 1251; *see also United States v. Figueroa-Labrada*, 720 F.3d

1258, 1266 (10th Cir. 2013). Because Ms. McClaflin did not properly preserve the issue at sentencing, we review for plain error.

The district court did not err by using the sworn victim impact statements to make its own independent findings of fact. "The sentencing judge remains ultimately responsible for determining the facts and must establish the relevant facts even if all the parties argue to the contrary." *United States v. Aragon,* 922 F.3d 1102, 1109 (10th Cir. 2019) (internal brackets omitted). In determining the number of victims and calculating loss, a district court must make independent findings supporting its conclusions. *Holloway,* 826 F.3d at 1251. In doing so, the court can look beyond admissible evidence at trial as long as the information has a sufficient indica of reliability to support its probable accuracy. *See, e.g.*, *United States v. Caiba-Antele*, 705 F.3d 1162, 1165 (10th Cir. 2012); *see also United States v. Sunmola,* 887 F.3d 830, 836–37 (7th Cir. 2018); U.S.S.G. § 6A1.3(a).

Here, the district court made independent factual findings by relying upon victim impact statements that were submitted under penalty of perjury and whose accuracy was not disputed by any party. The court heard testimony from the government's IRS agent who likewise relied upon the victim impact statements. Speaking in allocution, Ms. McClaflin referred to the statements, indicating she had "read them over and over and over . . .." Rec., vol. IV at 101. At no point did Ms. McClaflin raise any concerns or objection or otherwise contend that these sworn victim impact statements were unreliable. Accordingly, the victim impact statements were properly considered by the court.

In calculating the number of victims who suffered substantial financial hardship[2], the district court first determined that there were over ninety investors who were defrauded by Ms. McClaflin, counting husband and wife couples together as one victim. Of those ninety, sixty-three filed victim impact statements under penalty of perjury. Twenty-eight of these indicated that they had to make substantial changes to their employment or substantial changes to their living arrangements as a direct result of Ms. McClaflin's fraudulent scheme. At the very least the twenty-eight sworn statements meet the standard for substantial financial hardship laid out in the Sentence Guidelines Application Note. *See* U.S.S.G. § 2B1.1, cmt. n.4(f) (iv), and (v). Because the district court's consideration of this evidence was well within its discretion, the district court did not procedurally err in relying on the sworn victim impact statements.

    B. *§ 3553(a) factors*

---

[2] "**Substantial Financial Hardship.**—In determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim—
    (i) becoming insolvent;
    (ii) filing for bankruptcy under the Bankruptcy Code (title 11, United States Code);
    (iii) suffering substantial loss of a retirement, education, or other savings or investment fund;
    (iv) making substantial changes to his or her employment, such as postponing his or her retirement plans;
    (v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and
    (vi) suffering substantial harm to his or her ability to obtain credit."

U.S.S.G. § 2B1.1, cmt. n.4(f).

Ms. McClaflin also claims the district court failed to properly consider all of the relevant § 3553(a) factors before imposing its sentence. But, once again, she never objected to the district court's sentencing process at trial. We therefore review only for plain error.

Ms. McClaflin contends that the court did not ask to hear from counsel or the defendant until after it had already made up its mind. She relies on the court's statement prior to sentencing that "I am inclined to grant a variant sentence somewhere within that adjusted advisory guideline range . . . . However, I have not decided where within that range of 87 to 108 months the sentence should actually be." Rec., vol. IV at 85-86. But Ms. McClaflin takes a single statement out of the context of the entire sentencing process. Overall that process shows that the district court proceeded properly and considered the requisite factors. For example, when the court began it's sentencing, it stated:

> I will tell you where I am going, in terms of my inclinations, so that you can target any arguments you have to what my concerns are, and to persuade me otherwise, or to persuade me to go the way I have indicated, if that is what you want. I will hear from [defense counsel], then [the government], and finally, if Ms. McClaflin wishes to make any statement to me on her own behalf, I will hear from her.

*Id.* at 73–74. The court thus clearly demonstrated that, although it had a general idea based upon the PSR, it would hear from the parties involved before making the final decision.

Ms. McClaflin further contends the district court failed to consider other relevant mitigating factors besides Ms. McClaflin's cooperation with the government

when imposing her sentence.  We disagree.  While the court put an emphasis on Ms. McClaflin's cooperation, this was not the only factor it considered.  For example, the court clearly considered the nature and circumstances of the offense by noting the impact of Ms. McClaflin's scheme on her victims.  It also noted that Ms. McClaflin did not act in a manner entirely consistent with a woman who was truly sorry for her conduct, expressing concerns about Ms. McClaflin's failure to account for personal assets and her divorce from her husband to secure his assets.  With respect to the § 3553(a) factors, "[w]e do not require a ritualistic incantation to establish consideration of a legal issue, nor do we demand that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." *United States v. Lopez-Flores*, 444 F.3d 1218, 1223 (10th Cir. 2006) (citation omitted); *see also United States v. Rines,* 419 F.3d 1104, 1107 (10th Cir. 2005) ("It is true that the district court did not march through § 3553(a)'s sentencing factors, but we have never imposed such a requirement.").

Although Ms. McClaflin specifically alleges that the district court did not consider her medical circumstances, the record reveals that in fact it did do so before determining that the Bureau of Prisons was better suited to decide which facilities and treatments were necessary.  Rec., vol. IV at 115 ("I think the Bureau of Prisons can sort out whether she really does have serious medical issues that are different from any of the other defendants that they see on a regular basis who have medical

issues."). The court was clearly aware of and considered Ms. McClaflin's medical needs at sentencing, but it did not deem them determinative, noting that Ms. McClaflin was not at risk of undergoing a major procedure in the imminent future. Because the district court clearly considered the relevant § 3553(a) factors, it did not plainly err when it sentenced Ms. McClaflin.

      We AFFIRM the judgment of the district court.