**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 1:17-cr-00168-CMA-1

UNITED STATES OF AMERICA

v.

KAREN LYNN MCCLAFLIN

---

**DECLARATION OF RAUL CAMPOS**

---

I, Raul Campos, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby make the following declaration relating to the above entitled matter. All records attached to this declaration are true and accurate copies of Bureau records maintained in the ordinary course of business.

**I.     Introduction**

1. I am currently employed by the Federal Bureau of Prisons (BOP) of the United States Department of Justice, as an Associate Warden, at the Federal Medical Center Carswell in Fort Worth, Texas (FMC Carswell). I have been employed by the BOP since August 1995.

2. The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties.

1

**II      FMC Carswell Accreditation**

3.     FMC Carswell was reviewed by the American Correctional Association on May 14-16, 2019.   The facility is fully accredited.[1]

4.     Effective December 21, 2017, Joint Commission accredited FMC Carswell for Ambulatory Care, Behavioral Health Care, and Nursing Care.[2]

**III     The BOP's Authority to Place inmates on Home Confinement**

5.     The BOP's statutory authority to transfer prisoners to Home Confinement rests in 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541.   The BOP's policy and procedures regarding Home Confinement are outlined in BOP Program Statement 7320.01, *Home Confinement* and BOP Operations Memorandum, *Home Confinement under the First Step Act*[3].   Both statutes set forth certain limitations with respect to the BOP's transfer authority.   *See* 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541.   However, pursuant to the Attorney General's directives in light of the COVID-19 pandemic, dated March 26, 2020, and April 3, 2020, *infra,* and given the surge in positive cases at select sites, the BOP began immediately reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention (CDC), to determine which inmates are suitable for Home Confinement. Since the release of the Attorney General's original memorandum dated March 26,

---

[1]  *See* http://www.aca.org/ACA_Prod_IMIS/ACA_Member/Standards_and_Accreditation/SAC_AccFacHome.aspx?WebsiteKey=139f6b09-e150-4c56-9c66-284b92f21e51&hkey=f53cf206-2285-490e-98b7-66b5ecf4927a&CCO=2#CCO
[2]  *See* https://www.qualitycheck.org/quality-report/?keyword=Carswell&bsnid=242703
[3]  *See* www.bop.gov via the Resources tab.

2

2020, the BOP has been prioritizing transfers to Home Confinement of all suitable inmates as an appropriate response to the COVID-19 pandemic.

**IV   Attorney General's Memorandum for the Director of the Bureau of Prisons, dated March 26, 2020**

6.   On March 26, 2020, the Attorney General issued a Memorandum for the Director of the Bureau of Prisons (the March 26, 2020 Memorandum) to ensure that, in light of the COVID-19 pandemic, BOP utilizes Home Confinement, where appropriate, to protect the health and safety of BOP personnel and people in BOP's custody. Pursuant to the March 26, 2020 Memorandum, BOP has been prioritizing the use of its statutory authorities to grant Home Confinement for inmates in connection with the ongoing COVID-19 pandemic.   It was noted in the March 26, 2020 Memorandum that many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care.

7.   In assessing whether Home Confinement should be granted pursuant to the March 26, 2020 Memorandum, the BOP considers the totality of circumstances for each individual inmate, the statutory requirements for Home Confinement, and the following non-exhaustive list of discretionary factors:

   a.   The age and vulnerability of the inmate contracting COVID-19, in accordance with the CDC guidelines;

   b.   The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities.

  c. The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment;

  d. The inmate's score under PATTERN[4] (the Prisoner Assessment Tool Targeting Estimated Risk and Need), with inmates who have anything above a minimum score not receiving priority treatment.

  e. Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

  f. The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community.   Some offenses, such as sex offenses, violent crimes, or terrorism, will render an inmate ineligible for Home Confinement.   Other serious offenses weigh heavily against consideration for Home Confinement.

8. In addition to these factors, the March 26, 2020 Memorandum stated that before granting any inmate Home Confinement, the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risk of COVID-19 at the location in which the inmate seeks Home Confinement.   The BOP will not grant Home Confinement to inmates when doing so is

likely to increase their risk of contracting COVID-19.   The BOP will grant Home Confinement only when it has been determined – based on the totality of circumstances for each individual inmate – that transfer to Home Confinement is likely not to increase the inmate's risk of contracting COVID-19.

9. Moreover, the March 26, 2020 Memorandum noted that for the protection of the public, any inmate to whom BOP grants Home Confinement is to be placed in a mandatory 14-day quarantine before that inmate is discharged from a BOP facility to Home Confinement.   Inmates transferred to Home Confinement under this prioritized process are also subject to location monitoring devices and, where a court order is entered, are subject to supervised release.

**V   The CARES Act and the Attorney General's Memorandum for the Director of the Bureau of Prisons, dated April 3, 2020**

10. The Coronavirus Aid, Relief, and Economic Security (CARES) Act, Public Law No. 116-236 (enacted March 27, 2020), authorizes the Attorney General to expand the cohort of inmates who can be considered for Home Confinement upon his finding of emergency conditions which are materially affecting the function of the BOP.   On April 3, 2020, the Attorney General made that finding, and in a Memorandum for the Director for the Bureau of Prisons (April 3, 2020 Memorandum), authorized the Director to immediately maximize appropriate transfers to Home Confinement of all appropriate inmates held at BOP facilities where the Director determines that COVID-19 has materially affected operations.

---

[4] For more information on PATTERN, please visit www.bop.gov via Inmates/First Step Act tab.

11. The April 3, 2020 Memorandum specifically stated that the BOP must move with dispatch in using Home Confinement, where appropriate, to move vulnerable inmates out of FCI Oakdale, FCI Danbury, and FCI Elkton, and to give priority to those institutions, and others similarly affected, as the BOP continues to process the remaining inmates who are eligible for Home Confinement under pre-CARES Act standards.

12. The April 3, 2020 Memorandum directed that the BOP give priority in implementing the new standards to the most vulnerable inmates at the most affected facilities and was explicit that the BOP should begin implementing this directive immediately at the identified facilities and any other facilities at risk of similar problems. The April 3, 2020 Memorandum stated that the review should include a much broader pool of at-risk inmates – not only those who were eligible for transfer prior to the Attorney General exercising his authority under the CARES Act.   The assessment of all inmates remains guided by the factors in the March 26, 2020 Memorandum.

13. For inmates deemed suitable candidates for Home Confinement, the April 3, 2020 Memorandum directed the BOP to immediately process these inmates for transfer and then immediately transfer them following a 14-day quarantine at an appropriate BOP facility   The April 3, 2020 Memorandum further authorized BOP to, in appropriate cases, require that the inmate being transferred undergo his or her 14 day quarantine in the residence to which the inmate is being transferred rather than in the BOP facility from which the inmate is being transferred.

14. The April 3, 2020 Memorandum also recognized that the BOP has limited resources to monitor inmates on Home Confinement and that the U.S. Probation Office

6

is unable to monitor large number of inmates in the community, and authorized the BOP to transfer inmates to Home Confinement even if electronic monitoring is not available, so long as it determines in every instance that doing so is appropriate and consistent with the obligation to protect public safety.

15. Lastly, the April 3, 2020 Memorandum stated that it is essential for the BOP to continue making determinations for Home Confinement in a careful and individualized way that remains faithful to the duty of protecting the public and law enforcement officers.

### VI    The BOP's Implementation of the March 26, 2020 and the April 3, 2020 Memoranda

16. The BOP is devoting all available resources to executing the Attorney General's directives, with such resources tailored and prioritized according to the needs of individual institutions across the country. The BOP is assessing the inmate population to determine which inmates would be appropriate for transfer under this priority program. The BOP is then processing those inmates for transfer as expeditiously as possible.

17. The BOP is also frequently updating its public website to provide information and responses to frequently asked questions regarding its response to the COVID-19 pandemic, including providing information regarding its implementation of the Attorney General's directives.

18. The BOP has increased Home Confinement by over 148% since March 2020, and is continuing to aggressively screen inmates for Home Confinement. Since the March 26, 2020 Memorandum instructing the BOP to prioritize Home Confinement

as an appropriate response to the COVID-19 pandemic, the BOP has placed an additional 4,817 inmates on Home Confinement.[5]

19.   Inmates do not need to apply to be considered for Home Confinement. BOP Case Management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General.  While all inmates are being reviewed for suitability for Home Confinement, any inmate who believes he or she is eligible may request to be referred to Home Confinement and provide a release plan or his or her Case Manager.

20.   It should be noted that for public safety reasons, in accordance with March 26, 2020 Memorandum, and to ensure the BOP is deploying its limited resources in the most effective manner, the BOP is currently assessing a number of factors to ensure that an inmate is suitable for Home Confinement including, but no limited to, reviewing the inmate's institutional discipline history for the last twelve months; ensuring that the inmate has a verifiable release plan; verifying that the inmate's primary offense is not violent, a sex offense, or terrorism related; and confirming the inmate does not have a current detainer.

21.   Additionally, the BOP has generally prioritized Home Confinement consideration for those inmates who have served a certain portion of their sentences, or who have only a relatively short amount of time remaining in those sentences.  While these priority factors are subject to deviation in BOP's discretion in certain circumstances and are subject to revision as the situation progresses, BOP is, at this time, prioritizing consideration those inmates who either (1) have served 50% or more of

---

[5] *See* www.bop.gov.

their sentences, or (2) have 18 months or less remaining in their sentences and have served 25% or more of their sentences.   As BOP processes the inmates eligible for Home Confinement under these criteria and learns more about the COVID-19 pandemic and its effect on BOP facilities, it is assessing whether and how to otherwise prioritize consideration.

22.   As of May 13, 2020, before the BOP approves an inmate for Home Confinement who does not meet the criteria outlined by the Attorney General, the BOP provides notice of its consideration to the United States Attorney's Office that prosecuted the inmate so that the United States Attorney's Office is given an opportunity to provide additional information, including information from victims, which might be relevant to the analysis.   The United States Attorney's Office then has three business days to provide any additional information to the BOP.   The BOP retains full discretion to make the decision with or without this input based on a flexible consideration of the criteria and the totality of the circumstances, including the risks associated with the COVID-19 virus.   The notification requirement will not be applied to inmates approved for Home Confinement prior to this requirement's adoption on      May 13, 2020.

23.   If the incarcerated individual does not qualify for Home Confinement under BOP criteria, an inmate may be reviewed for placement in a Residential Reentry Center (RRC) and possibly Home Confinement at a later stage in accordance with applicable laws and BOP policies.

**VII    Measures to Protect Inmate and Staff Safety**

24.    In response to the pandemic, BOP has taken significant measures to protect the health of inmates in its charge.   These steps include, but are not limited to, the following:

a.    Beginning May 18, 2020, BOP implemented Phase Seven of the Nationwide Action Plan, which includes an extension of previously disseminated guidance and currently governs operations.   The current modified operations plan requires that inmates in every BOP institution be secured in their assigned cells/quarters for a period of at least 14 days, in order to stop any spread of the disease.   Only limited group gathering is permitted with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access.

b.    All staff and inmates have been and will continue to be issued an appropriate face covering and strongly encouraged to wear the face covering when in public areas when social distancing cannot be achieved.

c.    Every newly admitted inmate is screened for COVID-19 exposure risk factors and symptoms.   Asymptomatic inmates with risk of exposure are placed in quarantine.   Symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.   In addition, in areas with sustained community transmission and at medical centers, all staff are screened for symptoms upon entering an institution.   Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone.

d.      Contractor access to BOP facilities is restricted to only those performing essential services (e.g. medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems.   All volunteer visits are suspended absent authorization by the Deputy Director of the BOP.   Any contractor or volunteer who requires access will be screened for symptoms and risk factors.

e.      Social and legal visits were stopped as of March 13, 2020, and remain suspended until at least June 30, 2020, to limit the number of people entering the facility and interacting with inmates.   In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month.   Tours of facilities are also suspended.   Legal visits may be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screening protocols in place for prison staff, contractors, and visitors.

f.      Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page.[6]

**VIII    Specifics about the Inmate and Institution**

25.    FMC Carswell is located in Fort Worth, Texas.   FMC Carswell is fully accredited by the Joint Commission (JC) for Ambulatory Care, Behavioral Health Care, and as a Nursing Care Center.   It is located in the northeast corner of the Naval Air Station, Joint Reserve Base, Fort Worth.   Being the only Federal Medical Center for

female offenders, the FMC Carswell provides specialized medical and mental health services, as well as appropriate correctional programs.   FMC Carswell has reviewed all of its Care Level 4[7]   inmates for eligibility for priority consideration for home confinement under the CARES Act and the Barr memoranda.

26.   FMC Carswell has been employing enhanced sanitation procedures and high tough surfaces are frequently sanitized.   Additionally, inmate movement remains limited.

27.   Inmate Karen Lynn McClaflin, Reg. No. 44166-013, is currently designated to FMC Carswell.   She arrived at this institution on June 11, 2019.   When she arrived to the institution she was assigned a medical Care Level 4 designation and was housed in the nursing care unit.   On or around October 9, 2019, she was discharged from the nursing care unit and her medical care level was changed to Care Level 2.

28.   As of today's date, FMC Carswell has had zero staff test positive for COVID-19.   Two inmates at FMC Carswell have tested positive for COVID-19 previously but there are currently no inmates with active, open cases of COVID-19 at FMC Carswell.   Regarding the two inmates that tested positive previously, the first positive test was an inmate who was a recent admission to FMC Carswell.   She was housed in quarantine and isolation the entire time she was at FMC Carswell.   The second COVID-19 positive case was another recent admission to FMC Carswell.   The second positive case was quarantined with the first positive case.   She was housed in isolation because of her positive test result, and thus, was housed in quarantine and

---

[6] www.bop.gov/coronavirus/index.jsp
[7] For more information about care level designations *see*

isolation the entire time she was at FMC Carswell until she recovered from COVID-19 and received two negative tests. As of today's date, there are currently no inmates or staff with active COVID-19 at FMC Carswell.

## IX     Compassionate Release / Reduction in Sentence Procedures

29. The BOP lacks the authority to provide inmates with a reduction in sentence through compassionate or "early release." Rather, only an Article III judge – specifically, the inmate's sentencing judge – may authorize such a reduction of an inmate's federal sentence. However, on an inmate's request, the Director of the BOP may make a motion to an inmate's sentencing court to reduce a term of imprisonment under 18 U.S.C. § 4205(g) and 18 U.S.C. § 3582(c)(1)(A). The BOP uses these statutory authorities in "extraordinary or compelling circumstances" which could not reasonably have been foreseen by the court at the time of sentencing. This process is outlined in BOP Program Statement 5050.50, *Compassionate Release/Reduction in Sentence Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*[8]

30. Inmate McClaflin filed a request for a Reduction in Sentence with the FMC Carswell Warden on December 4, 2019. She requested a reduction in sentence due to her debilitated medical condition. On December 13, 2019, the FMC Carswell Warden denied her request for a Reduction in Sentence, noting that although she required a wheelchair for mobility, she was able to complete all activities of daily living and she did not meet the criteria for a Reduction in Sentence based on medical circumstances – Debilitated Medical Condition, as outlined in Program Statement 5050.50.

---

www.bop.gov/foia/docs/medicalclassificationguidelines.pdf
[8] *See* www.bop.gov via the Resources tab.

31. An inmate may appeal the Warden's denial of her Reduction in Sentence request via the BOP's Administrative Remedy Program. On January 28, 2020, Inmate McClaflin filed a Request for Administrative Remedy with the FMC Carswell Warden requesting reconsideration of the Warden's December 13, 2019, denial of her Reduction in Sentence request. The Warden denied her request on February 12, 2020, noting that according to her attending physician and treating therapist, she did not meet criteria for a Reduction in Sentence due to a debilitated condition as she was able to complete all self-care activities independently.

32. Inmate McClaflin submitted an Appeal of the Warden's response to Request for Administrative Remedy on March 12, 2020. This appeal was denied as untimely. Inmate McClaflin was notified she could resubmit the Appeal with documentation from a staff member indicating the reason for the delay. As of today's date, McClaflin has not resubmitted the Appeal. In accordance with Program Statement 1330.18, *Administrative Remedy Program*[9] an appeal must be received at the Regional Office within 20 days of the Warden's Signature on the Response to the Request for Administrative Remedy. Inmate McClaflin has submitted no other administrative remedies regarding a request for a Reduction in Sentence.

Executed on this 15th day of June 2020, in Fort Worth, Texas.

Raul Campos
Associate Warden
FMC Carswell
Federal Bureau of Prisons

---

[9] See www.bop.gov via the Resources tab.